# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| JASON KERR *and* JENNIFER KERR,<br><br>*Plaintiffs,*<br><br>v.<br><br>CITY OF PERRY, GEORGIA, *et al.,*<br><br>*Defendants.* | CIVIL ACTION NO.<br>**5:24-cv-00285-TES** |

## ORDER GRANTING MOTION TO DISMISS

Before the Court is Defendant Matthew Moulton's Motion to Dismiss [Doc. 18], filed in his official capacity as the Sheriff of Houston County, Georgia.[1] Plaintiffs Jason and Jennifer Kerr filed this action on August 21, 2024, asserting claims for damages under 42 U.S.C. § 1983 and state law against Sheriff Moulton in his official capacity.[2] [Doc. 17]. Sheriff Moulton moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state

---

[1] Although Sheriff Moulton states at the end of his Motion that he "is entitled to *summary judgment,*" he does not rely on any external evidence or facts outside of the pleadings. [Doc. 18-1, p. 9]. Nothing else in the Motion suggests that it is anything but a motion to dismiss, and Plaintiffs' Response treats it as such. *See* [Doc. 26, p. 2]. The Court construes the reference to summary judgment as a scrivener's error and addresses the Motion under the standards governing dismissal.

[2] Plaintiffs' Amended Complaint named Sheriff Cullen Talton as a Defendant, but it was unclear whether Plaintiffs were asserting individual-capacity claims against him. [Doc. 17, p. 1]. Plaintiffs later clarified "that they did not assert an individual-capacity claim against Sheriff Talton" and acknowledged that Sheriff Moulton was "automatically substituted as a party" to this action under Federal Rule of Civil Procedure 25(d). [Doc. 12, ¶¶ 4, 6, 7, 9].

a claim upon which relief can be granted. [Doc. 18]. As detailed below, the Court **GRANTS** Sheriff Moulton's Motion to Dismiss [Doc. 18], **DISMISSES** Plaintiffs' claims against him, and **DIRECTS** the Clerk of Court to **TERMINATE** Sheriff Moulton as a party to this action. The Court further **STAYS** discovery until Plaintiffs file an amended complaint that cures the shotgun-pleading deficiencies explained below.

## FACTUAL BACKGROUND[3]

This case arises from Plaintiff Jason Kerr's June 2023 arrest in his home in Perry, Georgia. According to Plaintiffs, Officer Sean Whilden of the City of Perry police department and Deputy Tyler Tripp of the Houston County Sheriff's Department arrested Mr. Kerr on June 18, 2023, in connection with an alleged hit-and-run incident that occurred earlier that day. [Doc. 17, ¶ 12]. Plaintiffs allege that, without probable cause, Officer Whilden and Deputy Tripp came to the Kerrs' home, threatened Mr. Kerr with a taser, used excessive force, and unlawfully arrested him. [*Id.* at ¶¶ 14–15]. Mr. Kerr claims that he suffered injuries to his neck, arms, and shoulder. [*Id.* at ¶ 20].

Plaintiffs filed this lawsuit on August 21, 2024, bringing claims under 42 U.S.C. § 1983 and Georgia tort law against the Houston County Sheriff in his official capacity. *See* [*id.*]. Sheriff Moulton was not serving as Sheriff of Houston County at the time of Mr. Kerr's arrest, but he was substituted for the previous Sheriff under Federal Rule of

---

[3] Unless otherwise noted, the Court assumes the facts alleged in Plaintiffs' Complaint to be true at this stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); [Doc. 17].

Civil Procedure 25(d). Sheriff Moulton moves to dismiss all claims against him on the grounds of Eleventh Amendment and sovereign immunity. [Doc. 18].

## DISCUSSION

### A.    Legal Standard

When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint survives a motion to dismiss if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). This rule "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds* by *Davis v. Scherer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further

factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). In this regard, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B.**    **Sheriff Moulton's Motion to Dismiss**

Plaintiffs' Amended Complaint asserts claims against Sheriff Moulton under § 1983 for alleged constitutional violations and under Georgia law for torts including assault, false arrest, and intentional infliction of emotional distress. Sheriff Moulton moves to dismiss, arguing that Eleventh Amendment immunity bars Plaintiffs' § 1983 claims and that sovereign immunity bars Plaintiffs' claims under Georgia law. *See* [Doc. 18]. The Court addresses his arguments in turn.

**1.**    **Plaintiffs' § 1983 Claims**

Counts One, Two, and Seven of Plaintiffs' Amended Complaint assert claims for money damages against Sheriff Moulton under § 1983—chiefly for Sheriff Moulton's failure to train and supervise Deputy Tripp. [Doc. 17, pp. 7–8, 9]; *see* [Doc. 26, p. 5 (clarifying that "Plaintiffs' official capacity claims against Defendant Moulton arise chiefly from his failure to train and supervise Deputy Tyler Tripp")]. It is well-established that such claims are barred by the Eleventh Amendment. *See Manders v. Lee*, 338 F.3d 1304, 1328 (11th Cir. 2003); *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1347 (11th Cir. 2003).

In their Response, Plaintiffs argue that Sheriff Moulton is a final policymaker with respect to hiring and firing deputies under *Monell* and *Pembaur,* so their official-capacity § 1983 claims against him are not barred by Eleventh Amendment immunity. [Doc. 26, pp. 5–9]; *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Plaintiffs appear to argue that *Manders* is inconsistent with *Pembaur*, and they contend that because sheriffs are not "county officers" under Georgia law, they must be treated as independent policymakers whose decisions can give rise to § 1983 liability—even in an official-capacity suit. [*Id.* at pp. 7–8].

This argument misunderstands controlling Eleventh Circuit precedent. *See, e.g.*, *Manders*, 338 F.3d at 1328 (citations omitted). While *Monell* and *Pembaur* allow for municipal liability under § 1983, they don't allow a plaintiff to circumvent the Eleventh Amendment. *See id.* Sheriffs in Georgia function as "arms of the state"—not of the county—while discharging most of their duties. *See id.*; *Rylee v. Chapman*, 316 F. App'x 901, 905 (11th Cir. 2009) ("The Eleventh Amendment to the United States Constitution bars suit in federal court against an 'arm of the state,' except where such immunity is waived by the state or abrogated by Congress."); *see generally Quern v. Jordan*, 440 U.S. 332, 345 (1979) (holding that "§ 1983 does not . . . abrogate the Eleventh Amendment immunity of the States"). In *Grech*, the Eleventh Circuit unequivocally stated that a "sheriff acts on behalf of the State in his function as a law enforcement officer and

keeper of the peace in general." 335 F.3d 1326, 1347 (11th Cir. 2003). This is so because, "under Georgia law, counties lack authority and control over sheriffs' law enforcement functions." *Id.* at 1332. Counties do not, and cannot, direct sheriffs how to make arrests, "how to hire, train, supervise, or discipline" deputies, what policies to adopt, or how to operate their offices. *Id.* at 1347.

Plaintiffs' argument fails because it conflates policymaking authority under state law with *Monell's* framework for municipal liability. *See* [Doc. 26]. In this context, Sheriff Moulton—in his official capacity as the Sheriff of Houston County—is not a "municipal policymaker" under *Monell. See Grech*, 335 F.3d at 1347. And Plaintiffs cannot invoke *Monell* or *Pembaur* to side-step the Eleventh Amendment. *See id.* Thus, Plaintiffs' official-capacity claims against Sheriff Moulton are barred by Eleventh Amendment immunity.

## C.    <u>Plaintiffs' Remaining State-Law Claims</u>

Next, Sheriff Moulton moves to dismiss Plaintiffs' state-law claims against him, arguing that those claims are barred by the doctrine of sovereign immunity. *See* [Doc. 18, pp. 7–9]. Under Georgia law, counties and county officials acting in their official capacities are immune from suit unless that immunity has been clearly and expressly waived by Georgia's Constitution or by an act of the General Assembly. *Lathrop v. Deal*, 801 S.E.2d 867, 880 (Ga. 2017) (citation omitted); *Gilbert v. Richardson*, 452 S.E.2d 476, 480 (Ga. 1994); *Cameron v. Lang*, 546 S.E.2d 155, 157 (Ga. 2001). Because a lawsuit against a sheriff in their official capacity is effectively a lawsuit against the county itself, a sheriff

is entitled to raise any sovereign immunity defenses available to the county. *Gilbert*, 452 S.E.2d at 480; *Muckle v. Robinson*, No. 2:12-CV-0061-RWS, 2013 WL 251113, at *4 (N.D. Ga. Jan. 23, 2013) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *Carter v. Butts Cnty.*, 821 F.3d 1310, 1323 (11th Cir. 2016) (citation omitted).

This is the case even when a sheriff might be considered an "arm of the state" for the purposes of Eleventh Amendment immunity. *See Muckle*, 2013 WL 251113, at *5. As one court has noted, "[t]his seemingly paradoxical result is due to the difference in the type of claim"—while a sheriff may be a state actor for federal-liability purposes, he remains a county official for purposes of state sovereign immunity." *Spell v. Jeff Davis Cnty.*, No. 2:24-cv-69, 2025 WL 696997, at *7 (S.D. Ga. Mar. 4, 2025); *see also Boyd v. Nichols*, 616 F. Supp. 2d 1331, 1348–49 (M.D. Ga. 2009).

Waivers of sovereign immunity under Georgia law are "strictly construed against a finding of waiver." *Hooks v. Rockdale Cnty.*, 907 S.E.2d 342, 345 (Ga. Ct. App. 2024) (citation omitted). The Georgia Supreme Court has made clear that only the legislature—not the courts—has the authority to waive sovereign immunity, and that any such waiver must be both express and specific. *City of Atlanta v. Gilmere*, 314 S.E.2d 204, 206 (Ga. 1984). Courts cannot read waivers into statutes based on general language or public policy considerations, nor may they create exceptions that the legislature didn't include. *Id.*

The burden rests on the party seeking to overcome sovereign immunity—in this

case, Plaintiffs—to establish that a statute expressly waives a defendant's immunity for the particular type of claims they assert. *Richardson v. Quitman Cnty.*, 912 F.Supp.2d 1354, 1368–69 (M.D. Ga. 2012); *Liberty Cnty. v. Eller*, 761 S.E.2d 164, 166 (Ga. Ct. App. 2014). That means they need to do more than allege wrongdoing—they need to show a statute that authorizes the suit and removes immunity.

Although the Amended Complaint is far from clear as to which claims Plaintiffs assert against each Defendant, it is clear that any state-law claims asserted against Sheriff Moulton in his official capacity are barred by sovereign immunity. *See* [Doc. 17]. Plaintiffs bring a variety of tort claims in Counts Three through Nine, all directed at "Defendants": assault and battery, false arrest, false imprisonment, intentional infliction of emotional distress, failure to train and supervise, tortious coercion, and loss of consortium. *See* [*id.* at pp. 7–9]. The Amended Complaint does not allege that the Sheriff did—or did not do—anything at all, but Plaintiffs confirm in their Response that they are seeking to hold Sheriff Moulton liable for Deputy Tripp's actions under a supervisory liability theory. [Doc. 26, pp. 10–12].

Plaintiffs argue that "Georgia has waived sovereign immunity as it relates to official actions by a county sheriff" based on O.C.G.A. §§ 15-16-24 and 45-4-26. [*Id.* at p. 11]. But courts have repeatedly held that those statutes do not waive sovereign immunity. As Judge Gardner recently explained, these provisions "only apply to actions brought on the sheriff's or deputy's bond." *Weeks v. Colquitt Cnty.*, No. 7:23-CV-

77 (LAG), 2025 WL 897531, at *11 (M.D. Ga. Mar. 24, 2025).

Plaintiffs fail to identify any other statute that would authorize their claims or waive Houston County's immunity. *See* [Doc. 17]. While Georgia law does allow for limited waivers of immunity in certain cases—such as those involving the negligent use of a county-owned vehicle—those waivers apply only in narrow circumstances. *See* O.C.G.A. §§ 33-24-51, 36-92-2; *Harry v. Glynn Cnty.*, 500 S.E.2d 605, 607 (Ga. 1998); *Woody v. Columbus Consol. Gov't*, 817 S.E.2d 696, 700 (Ga. Ct. App. 2018). They certainly don't apply here.

Rather, their claims arise from Mr. Kerr's arrest, the force allegedly used during that arrest, and his subsequent detention. *See* [Doc. 17]. Georgia courts and federal courts applying Georgia law—including this Court—have consistently held that sovereign immunity bars the types of tort claims Plaintiffs assert in this case. *See, e.g.*, *Hooks*, 907 S.E.2d at 345 (finding no waiver for false imprisonment, false arrest, assault, and battery arising from being detained in the back of a patrol car were "all intentional torts, not acts of negligence."); *Spell*, 2025 WL 696997, at *7 (finding no waiver for false imprisonment, assault, negligent hiring, or intentional infliction of emotional distress); *see also Weeks*, 2025 WL 897531, at *9; *Pequeno v. Seminole Cnty.*, 623 F.Supp.3d 1337, 1347 (M.D. Ga. 2022); *Richardson*, 912 F.Supp.2d at 1369.

Because Plaintiffs have not identified any statute that waives sovereign immunity for their claims, Sheriff Moulton is entitled to sovereign immunity from suit

in his official capacity. Dismissal of Plaintiffs' state-law claims against him is thus appropriate.

### D.    Plaintiffs Must Replead Their Claims

Finally, Plaintiffs' Amended Complaint is a classic shotgun pleading, so they must replead their claims against the remaining Defendants if they wish to proceed. *See* [Doc. 17]. At a minimum, a plaintiff must draft his complaint to comply with the Federal Rules of Civil Procedure's pleading requirements. The Court reviews the sufficiency of Plaintiffs' Amended Complaint under Rules 8(a)(2) and Rule 10(b), which work together to serve at least two critical functions. These rules require a plaintiff to "present his claims discretely and succinctly, so that . . . his adversary can discern what he is claiming and frame a responsive pleading." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 (11th Cir. 1985)). They also allow courts to "determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted . . . ." *Id.*

Rule 8(a)(2) requires a plaintiff to draft his complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8 does not require detailed factual allegations, it requires Plaintiff to provide more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, for a plaintiff to clear this hurdle, his complaint must make "either direct or inferential allegations respecting all *material* elements of a cause of action." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006).

Similarly, Rule 10(b) requires a plaintiff to draft his complaint to "state [his] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Furthermore, "if doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Fed. R. Civ. P. 10(b).

Given the importance of these pleading requirements, "complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland*, 792 F.3d at 1320. "[C]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). In fact, tolerating a shotgun pleading is akin to "tolerat[ing] obstruction of justice." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). Because a district court suffers serious ramifications if it doesn't require a plaintiff to follow the most basic pleading requirements,[4] a district court has a "supervisory obligation" to

---

[4] *See, e.g., Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."); *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard.")).

direct a plaintiff to better plead his complaint in a manner that complies with federal

pleadings requirements. *Hayden v. Wells Fargo Home Mortg.*, No. 1:10-CV-2153-CAP-

ECS, 2010 WL 11647492, at *2 (N.D. Ga. Oct 29, 2010); *see also Lampkin-Asam v. Volusia*

*Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) (discussing shotgun pleadings as

complaints that "fail[] to adequately link a cause of action to its factual predicates");

*Vargas v. Lincare, Inc.*, 134 F.4th 1150, 1162 (11th Cir. 2025) (Tjoflat, J., concurring).

    Thus far, the Eleventh Circuit Court of Appeals has identified four types of

"shotgun pleadings." *McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir.

2019). Such complaints are characterized by:

> (1) multiple counts that each adopt the allegations of all preceding counts;
> (2) conclusory, vague, and immaterial facts that do not clearly connect to a
> particular cause of action; (3) failing to separate each cause of action or
> claim for relief into distinct counts; or (4) combining multiple claims against
> multiple defendants without specifying which defendant is responsible for
> which act.

*Id.* However, "the unifying characteristic of all types of shotgun pleadings is that they

fail to one degree or another, and in one way or another, to give the defendants

adequate notice of the claims against them and the grounds upon which each claim

rests." *Weiland*, 792 F.3d at 1323. The inherent issue with shotgun pleadings is that they

require the district court, as well as all named defendants, to "cull through [all factual]

allegations, identify the claims, and, as to each claim identified, select the allegations

that appear to be germane to the claims." *Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir.

2011).

Here, Counts Three through Nine of the Amended Complaint incorporate by reference the allegations of preceding counts, making the Complaint a classic shotgun pleading. [Doc. 17, pp. 7–11]; *see Weiland*, 792 F.3d at 1321; *McDonough*, 771 F. App'x at 955.

The Court will stay discovery until Plaintiffs file an amended complaint that cures the shotgun-pleading deficiencies.

## CONCLUSION

Accordingly, the Court **GRANTS** Sheriff Moulton's Motion to Dismiss [Doc. 18], **DISMISSES** Plaintiffs' claims against him, and **DIRECTS** the Clerk of Court to **TERMINATE** Sheriff Moulton as a party to this action.

The Court further **ORDERS** Plaintiffs to file a second amended complaint **within 21 DAYS** of the date of this Order and **STAYS** discovery until the amended complaint is filed. Failure to comply with this Order could result in the dismissal of this action. *See* Fed. R. Civ. P. 41(b).

**SO ORDERED**, this 16th day of July, 2025.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**