**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **JASON KERR** ***and*** **JENNIFER KERR,**<br><br>***Plaintiffs,***<br><br>**v.**<br><br>**CITY OF PERRY, GEORGIA,** ***et al.,***<br><br>***Defendants.*** | **CIVIL ACTION NO.**<br>**5:24-cv-00285-TES** |

**ORDER GRANTING DEFENDANT TRIPP'S MOTION TO DISMISS IN PART**

Before the Court is Defendant Tyler Tripp's ("Tripp") Motion to Dismiss. [Doc. 47]. Plaintiffs Jason ("Kerr") and Jennifer Kerr filed their Third Amended Complaint in this action on October 3, 2025. [Doc. 45]. In it, Kerr asserts claims for damages under 42 U.S.C. § 1983 and Georgia law against—as relevant for this motion—Tripp. [*Id.* at pp. 7–11]. Kerr brings one of those claims—intentional infliction of emotional distress—with Jennifer Kerr. [*Id.* at p. 10]. Tripp moves to dismiss all claims against him under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [Doc. 47, p. 1]. As detailed below, the Court **GRANTS** Tripp's Motion to Dismiss **in part** and **DISMISSES** Kerr's state law claims against him, including the state law claim brought with Jennifer Kerr.

## FACTUAL BACKGROUND[1]

This case arises from Kerr's June 2023 arrest at his home in Perry, Georgia. According to Plaintiffs, Officer Sean Whilden ("Whilden") of the City of Perry Police Department and Deputy Tripp of the Houston County Sheriff's Department arrested Kerr on June 18, 2023, in connection with an alleged hit-and-run incident that occurred earlier that Father's Day. [Doc. 45, ¶¶ 11–13]. The incident occurred when Kerr pulled into the Skweeky Kleen Car Wash and followed the instructions of the employees to place his vehicle on the mechanical tracks only to have his vehicle move forward and collide with an electronic sign. [*Id.* at ¶¶ 15–16]. Kerr remained at the scene and told employees of the car wash that the damage to the sign was because of the car wash's machine. [*Id.* at ¶ 19]. Employees of the car wash called the police, and Whilden responded. [*Id.* at ¶ 20].

Whilden and Tripp then went to the Kerr home. [*Id.* at ¶ 21]. Whilden charged Kerr with violating O.C.G.A. § 40-6-270, a misdemeanor under Georgia law, and arrested him. [*Id.* at ¶¶ 13, 23]. During the arrest, Tripp threatened Kerr with a taser. [*Id.* at ¶ 23]. Kerr claims he suffered injuries to his neck, back, and shoulder. [*Id.* at ¶ 27].

Plaintiffs filed this lawsuit on August 21, 2024, bringing claims under § 1983 and Georgia tort law against Tripp, among other defendants. *See* [Doc. 1]. Tripp moves to

---

[1] Unless otherwise noted, the Court assumes the facts alleged in Plaintiffs' Third Amended Complaint to be true at this stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); [Doc. 45].

dismiss all claims against him on the grounds of qualified immunity and official immunity. [Doc. 47].

**LEGAL STANDARD**

When ruling on a motion under Rule 12(b)(6), district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint survives a motion to dismiss if it alleges sufficient factual matter (accepted as true) to state a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. "A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible." *Clark v. Collier Cnty. Sheriff Kevin Rambosk,* No. 2:24-cv-692-SPC-NPM, 2025 WL 589241, at *2 (M.D. Fla. Feb. 24, 2025) (citing *Twombly,* 550 U.S. at 570). This rule "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other*

*grounds by Davis v. Scherer*, 468 U.S. 183 (1984). Whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). In this regard, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## ANALYSIS

Before addressing the merits of Tripp's motion, the Court pauses to address the type of evidence it can consider when ruling on a motion to dismiss. Although not in dispute, the Court makes clear that "when resolving a motion to dismiss . . . a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's

claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). This doctrine extends to body camera footage. *Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024). In fact, the Eleventh circuit has instructed courts to "accept the video's depiction instead of the complaint's account . . . and view the facts in the light depicted by the video." *Baker v. City of Madison*, 67 F.4th 1268, 1278 (11th Cir. 2023). All that is required for a court to consider body camera footage is that "its authenticity is not challenged." *Swinford*, 121 F.4th at 188 (citations omitted).

With that established, the Court moves on to the substance of Tripp's motion. Kerr asserts claims against Tripp under § 1983 for both "unlawfully detaining and arresting" him, and for using "unnecessary and excessive force against" him. [Doc. 26, ¶ 38]. Plaintiffs also bring claims against Tripp under Georgia law for assault and battery, false arrest, and intentional infliction of emotional distress. [*Id.* at ¶¶ 39–45]. Tripp moves to dismiss, arguing that qualified immunity bars Plaintiff's § 1983 claims and that official immunity bars Plaintiffs' claims under Georgia law. [Doc. 47-1, p. 7]. The Court addresses his arguments in turn.

**1. <u>Kerr's § 1983 Claims</u>**

Tripp argues that Kerr's § 1983 claims should be dismissed because Tripp enjoys qualified immunity from suit. [Doc. 47-1, p. 7]. "[Q]ualified immunity protects government officials who are sued under § 1983 for money damages in their personal,

or individual capacities, but only so long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Fish v. Brown*, 838 F.3d 1153, 1162 (11th Cir. 2016). To receive qualified immunity, a defendant must show that "he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.* Here, it is undisputed that Tripp was acting within the scope of his authority. [Doc. 48, p. 4]. Since that threshold requirement is satisfied, the Court now turns to the Eleventh Circuit's two-part inquiry to determine if Tripp is entitled to qualified immunity. The inquiry requires the Court to "determine whether the facts, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right[,]" and whether the right was clearly established. *Fish*, 838 F.3d at 1162 (internal quotations omitted).

"Section 1983 creates a private cause of action for deprivations of federal rights by persons acting under color of state law." *Laster v. City of Tampa Police Dep't*, 575 F. App'x 869, 872 (11th Cir. 2014). Plaintiff brings, in essence, two § 1983 claims here. *See Watkins v. Davis,* No. 23-13616, 2025 WL 2730900, at *17 (11th Cir. Sept. 25, 2025) (where the court separately analyzed a claim for unlawful detention and a claim for excessive force). First, the Court analyzes Plaintiff's unlawful arrest and detention claim under §

1983.[2] "An arrest or detention qualifies as a 'seizure' of a person under the Fourth Amendment." *Clark*, 2025 WL 589241, at *3 (citing *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 366–67 (2017)). "The 'reasonableness' of a seizure or arrest under the Fourth Amendment turns on the presence or absence of probable cause." *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (citation omitted). "'[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest.'" *Dunn*, 464 F. Supp. 3d at 1361 (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)). Therefore, to determine whether Tripp's conduct violated a constitutional right, the Court must determine whether Tripp had probable cause to arrest Kerr. Probable cause comes in two forms: actual probable cause and arguable probable cause. *Dunn v. City of Fort Valley*, 464 F. Supp. 3d 1347, 1361 (M.D. Ga. 2020).

Actual probable cause "'exists when the facts and circumstances, of which the official has reasonably trustworthy information, would cause a prudent person to believe that [an individual] has committed, is committing, or is about to commit an offense.'" *Id.* (citing *Elmore v. Fulton Cnty. Sch. Dist.*, 605 F. App'x 906, 911 (11th Cir. 2015)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Furthermore, "[a]s long as the circumstances known

[2] The Court begins with the unlawful detention and arrest claim because, in the Eleventh Circuit, "if a stop or arrest is illegal, then there is no basis for any threat or any use of force, and an excessive force claim would always arise[.]" *Williams v. Deal*, 659 F. App'x. 580, 596 (11th Cir. 2016).

to the arresting official, when viewed objectively, can 'give probable cause to arrest *for any crime*, the arrest is constitutionally valid even if probable cause was lacking as to some offenses, or even all announced charges.'"[3] *Dunn*, 464 F. Supp. 3d at 1361 (citing *Elmore*, 605 F. App'x at 914).

Even if actual probable cause does not exist, a law enforcement official can still be shielded in his actions by qualified immunity through arguable probable cause. *Clark*, 2025 WL 589241, at *4. "The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Mia.*, 121 F.3d 1442, 1445 (11th Cir. 1997). "By now, it is well established in the Eleventh Circuit that 'if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" *Dunn*, 646 F. Supp. 3d. at 1362 (quoting *Poulakis v. Rogers*, 341 F. App'x 523, 527–28 (11th Cir. 2009)). Accordingly, to determine whether Kerr's arrest was constitutional under the Fourth Amendment, the Court must analyze whether actual or arguable probable cause existed to arrest Kerr for a violation of any offense.

Two Georgia statutes are at issue here. During the arrest, Whilden announced that he was arresting Kerr for violating O.C.G.A. § 40-6-270. [Doc. 45, ¶ 20]. In his

---

[3] In other words, "the 'validity of an arrest does not turn on the offense announced by the official at the time of the arrest.'" *Dunn*, 464 F. Supp. 3d at 1362 (quoting *Gonzalez v. Butts Cnty.*, 522 F. App'x 742, 746 (11th Cir. 2013) (alterations accepted)).

motion, Tripp changes lanes and now asserts that O.C.G.A. § 40-6-273 served as the authority for Kerr's (their) arrest. [Doc. 47-1, p. 16]. The Court will take those in order.

Section 40-6-270 reads, in relevant part,

> (a) The driver of any vehicle involved in an accident resulting in . . . damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or shall stop as close thereto as possible and forthwith return to the scene of the accident and shall: (1) Give his or her name and address and the registration number of the vehicle he or she is driving; (2) . . . exhibit his or her operator's license to the person struck or the driver or occupant of or person attending *any vehicle collided with*;
>
> . . .
>
> The driver shall in every event remain at the scene of the accident until fulfilling the requirements of this subsection.

O.C.G.A. § 40-6-270(a) (emphasis added). There was no other vehicle involved in this collision. Therefore, § 40-6-270 doesn't apply. Whilden and Tripp did not have even arguable probable cause under this statute.

Now, the Court turns to § 40-6-273, which reads:

> The driver of a vehicle involved in an accident resulting in injury to or death of any person or property damage to an apparent extent of $500.00 or more shall immediately, by the quickest means of communication, give notice of such accident to the local police department if such accident occurs within a municipality. If such accident occurs outside a municipality, such notice shall be given to the office of the county sheriff or to the nearest office of the state patrol.

O.C.G.A. § 40-6-273. "Apparent extent" is, admittedly, a low bar. However, the Court notes that the value of the damaged sign is not mentioned in Plaintiffs' Third Amended Complaint. *See generally* [Doc. 45]. And, the relevant body camera footage definitively

shows that neither officer mentioned an amount of any apparent damage.[4] *See, e.g.*, Body Camera Footage 02:03–03:04. Nothing in either the operative pleading or the body camera footage contains any description of the sign or the supposed damage to it. In fact, there is currently nothing the Court may evaluate at this procedural point that would establish "property damage to an apparent extent of $500.00 or more," or knowledge on the part of Tripp—who does not appear to have even gone to the car wash—of the extent of the damage.[5] O.C.G.A. § 40-6-273. So, without any facts as to how Tripp knew that the sign had sustained apparent damage of $500 at the motion-to-dismiss stage, the record contains nothing to show that Tripp had even arguable probable cause to arrest Kerr. This means that Plaintiffs have successfully (so far)

[4] This comes as no surprise as Defendants Whilden and Tripp came to the Kerrs' residence apparently with their mind made up to arrest Jason Kerr for violating O.C.G.A. § 40-6-270. Neither Defendant mentioned anything about O.C.G.A. § 40-6-273, which requires some a monetary value of the "apparent damage" to property.

[5] Even looking beyond what the court may consider in a motion to dismiss, there is nothing to support damage to an apparent extent of $500 or more. In his motion to dismiss, Tripp alleged a value for the sign—$2,537.69. [Doc. 47-1, p. 17]. In support of this assertion, Tripp cites to the Incident Report—prepared by Whilden at the car wash—that Tripp attached to his now-mooted motion to dismiss Plaintiffs' Second Amended Complaint. *See* [Doc. 33-2]. Tripp did not re-attach the report to the current motion to dismiss. *See* [Doc. 47]. But, giving him the benefit of the doubt and incorporating the report into the newest motion to dismiss, the report does not provide any grounds or verification for the $2,537.69 value beyond the hearsay of the general manager of the car wash. [Doc. 33-2, p. 4]. Whilden provided no explanation of the calculation behind the figure—especially since it was such a short period of time (on a Father's Day Sunday) after the accident and the subsequent trip to the Plaintiffs' house—nor is there any evidence of how or if Whilden verified that claim in any way. [*Id.*]. There are also no photos of the sign attached to the report, despite the report claiming to have them attached. [*Id.*]. Whilden did not include in the report any description of the damage to the sign or any statements showing Whilden's conclusions regarding the supposed damage to the sign. [*Id.*]. Regardless, if Tripp had attached the report to the current motion, it would not have helped.

alleged that Tripp violated a constitutional right. Again, the Court stresses that it only considered the Third Amended Complaint and the body camera footage. Discovery will almost certainly reveal additional facts that will shed light on exactly when and how Defendants determined the "apparent extent" of the damage to be greater than $500, if they did.

Since Tripp plausibly violated a constitutional right in his arrest and detention of Kerr, the Court now looks to see whether that right was clearly established at the time of the arrest. The short answer is yes. "[I]t is clearly established that an officer cannot arrest someone . . . in the absence of probable cause." *Doe ex rel. Doe v. Leach*, 829 F. App'x 419, 424 (11th Cir. 2020). Accordingly, Tripp is not entitled to qualified immunity (at this stage) for Kerr's unlawful detention and arrest claims, and Tripp's request to have the Court dismiss these claims is **DENIED**.[6]

That leaves Kerr's claim that Tripp used excessive force during the arrest. [Doc. 45, ¶ 38]. In the Eleventh Circuit "there is a fork in the road based on the lawfulness of a seizure." *Williams*, 659 F. App'x. at 596. If the seizure is unlawful under the Fourth Amendment, "any excessive force claim is subsumed in the unlawful-arrest claim." *Id.*

[6] Tripp argues that he was not the arresting officer, so he cannot be held liable for any unlawful arrest of Kerr. [Doc. 47-1, pp. 14–15]. However, Tripp was not "merely . . . present . . . at the scene" during the arrest. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010). Unlike the officers in *Brown*, Tripp did actively and personally participate in Kerr's arrest. He pointed a taser at Kerr and repeatedly demanded that Kerr put his hands behind his back. Body Camera Footage 03:07–03:30. Just because he was not the officer to place the handcuffs on Kerr does not mean Tripp was not an active participant in Kerr's arrest.

(internal citations omitted). In other words, "if a stop or arrest is illegal, then there is no basis for *any* threat or any use of force, and an excessive force claim would always arise but only collaterally from the illegal stop or arrest claim." *Id.* (emphasis added) (internal citations omitted). If the stop or arrest is legal, then there is "a discrete excessive force-claim." *Id.* (internal citations omitted).

Since the existence of a discrete excessive force claim depends on the legality of the underlying arrest, the Court cannot determine at this point whether Tripp is entitled to qualified immunity for a claim that may or may not be subsumed into Plaintiff's unlawful arrest claim. As the Court stated above, discovery will almost certainly shed light on whether this arrest was lawful. Without that information at this stage, though, the Court simply cannot analyze qualified immunity for excessive force. Accordingly, Tripp's request to have the Court dismiss the excessive force claim is also **DENIED**.

**2. <u>Plaintiffs' Remaining State Law Claims</u>**

Next, Tripp moves to dismiss Plaintiffs' remaining state law claims pursuant to official immunity. [Doc. 47-1, p. 17]. Those claims are, specifically, assault and battery, false arrest, and intentional infliction of emotional distress. [Doc. 45, pp. 9–10].

Official immunity applies to "public officials and employees sued in their individual capacities." *Jackson v. Dorsey*, No. 3:22-cv-144-TCB, 2023 WL 6214857, at *5 (N.D. Ga. Feb. 15, 2023). It "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority[.]" *Slaughter v.*

*Dooly Cnty.*, No. 5:06-cv-143 (CAR), 2007 WL 2908648, at *15 (M.D. Ga. Sept. 28, 2007). However, "officers can be liable for the negligent performance of ministerial acts within the scope of their authority as well as discretionary acts if committed with actual malice." *Id.* "Actual malice requires a deliberate intention to do wrong, and does not include implied malice, i.e. the reckless disregard for the rights or safety of others." *Hoyt v. Cooks*, 672 F.3d 972, 981 (11th Cir. 2012).

The first question, then, is whether the actions giving rise to Plaintiffs' claims were discretionary or ministerial. "Under Georgia law, 'a discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and *acting on them in a way not specifically directed*.'" *Coons v. Gwinnett Cnty.*, 657 F. App'x 856, 863 (11th Cir. 2016) (emphasis in original) (quoting *Roper v. Greenway*, 751 S.E.2d 351, 354 (Ga. 2013)) (alterations accepted). "A ministerial act, by contrast, is one done in the execution of a simple, specific duty." *Id.* "A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute." *Id.* (quoting *Roper*, 751 S.E.2d at 353). The "procedures or instructions" that establish the duty—regardless of the duty's source—must be "clear, definite, and certain." *Id.* (quoting *Roper*, 757 S.E.2d at 353). Plaintiffs cannot reasonably argue that Tripp's actions here weren't discretionary. *Goldring v. Henry*, No. 19-13820, 2021 WL 5274721, at *9 (11th Cir. Nov. 12, 2021) ("An officer's decision to arrest a person is a discretionary action."). Therefore,

Plaintiffs must show actual malice to overcome qualified immunity.

Rule 9(b) of the Federal Rules of Civil Procedure allows a plaintiff to generally allege malice and intent. Fed. R. Civ. P. 9(b). However,

> "generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. *It does not give him license to evade the less rigid—though still operative—structures of Rule 8.*

*Iqbal*, 556 U.S. at 686–87 (emphasis added). Here, Plaintiffs' complaint does allege that "the assaulting behavior of the above-referenced officers showed actual malice and an actual intent to cause injury in the performance of official duties." [Doc. 45, ¶ 26]. However, without more, such a legal conclusion is insufficient under Rule 8. *See A.K.J. v. Roundtree,* No. cv 123-153, 2025 WL 462514, at *9 (S.D. Ga. Feb. 11, 2025) (stating that "simply alleging a defendant acted with actual malice will not overcome official immunity[,]" but instead a plaintiff "must also offer factual allegations"). So, what was the "assaulting behavior" Plaintiffs allege to provide evidence of actual malice?

In short, legal conclusions. For Tripp, specifically, Plaintiffs allege that Kerr "was illegally arrested, detained, and assaulted by [Tripp] who accompanied and assisted [Whilden] in his unlawful arrest of [Kerr]." [*Id.* at ¶ 14]. Furthermore, Whilden and Tripp "engaged in unlawful, unjustified, and excessive force and unlawfully and unjustifiably arrested [Kerr] without legal cause." [*Id.* at ¶ 24]. The only non-legal conclusion for Tripp—which is also likely the source of the "assault" and "excessive

force"—is that Whilden, "accompanied by [Tripp]," threatened [Kerr], without cause or justification, with a taser . . . ." [*Id.* at ¶ 23]. In their response brief, Plaintiffs elaborated, stating that Tripp "continued threatening [Kerr] with a taser even as [Kerr] complied and asked for a supervisor." [Doc. 48, p. 14 (citing Body Camera Footage 03:07–03:44)]. As explained below, this is insufficient to draw an inference of actual malice, unlike what Plaintiffs argue. *See* [*Id.*].

In the body camera footage, tensions began to escalate when Whilden asked Kerr to put down the paint scraper, and Kerr accused Whilden of taking his job "too seriously." Body Camera Footage 02:44. Tripp's taser comes into view for the first time when Kerr pulls his arm away from Whilden and backed away from both officers. Body Camera Footage 03:06. The taser remained visible through the body camera footage until tensions de-escalated, with Whilden telling Kerr to relax his arms, and Kerr replying—in a calmer tone than he had been using while the taser had been out—that he was relaxed. Body Camera Footage 03:45.[7] All in all, Tripp had his taser out between 29 and 39 seconds. While it is true that Kerr asked for a supervisor during this time, the body camera footage reveals that Tripp drew his taser after tensions escalated and holstered it as soon as tensions de-escalated. "Plaintiffs have not offered [enough]

[7] The last time the taser is visible in frame is actually at 03:35. Body Camera Footage 03:35. However, drawing inferences in favor of Plaintiffs, Tripp's right hand, which came into frame as the taser came into frame, drops at 03:45. Body Camera Footage 03:45. The Court concludes, therefore, that Tripp holstered the taser sometime between 03:35 and 03:45.

evidence from which a rational juror could conclude that [Tripp] acted with actual malice or actual intent to cause injury to [Kerr] by drawing and pointing his taser."[8] *Simpson v. Coffee Cnty. Sch. Dist.*, No. 5:13-cv-32, 2016 WL 4399799, at *6 (S.D. Ga. Aug. 16, 2016), *aff'd sub nom. Simpson v. Vickers*, 703 F. App'x 718 (11th Cir. 2017).

Therefore, Tripp is entitled to official immunity for Plaintiffs' state law claims. Plaintiffs' state law claims are **DISMISSED**.

**CONCLUSION**

Accordingly, the Court **GRANTS in part** Tripp's motion to dismiss as to Kerr's state law claims against Tripp, including any claim brought by Jennifer Kerr. Kerr's § 1983 unlawful detention and arrest claim and excessive force claim survive Tripp's motion to dismiss. Any other claims against Tripp are **DISMISSED** with prejudice.

**SO ORDERED**, this 3rd day of December, 2025.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[8] Plaintiffs argue that the determination of malice is a "factual question inappropriate for resolution on a motion to dismiss." [Doc. 48, p. 15]. However, in the context of official immunity, it is appropriate to consider whether a plaintiff has sufficiently pled malice at the motion to dismiss stage. *See Harper v. Perkins*, 459 F. App'x 822, 828 (11th Cir. 2012) (considering actual malice on a motion to dismiss); *A.K.J. v. Roundtree*, 2025 WL 462514, at *9 (same); *Smith v. Wayne Cnty., Ga.*, 742 F. Supp. 3d 1350, 1378 (S.D. Ga. 2024) (same).